UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | ) ) | |
| Plaintiff/Counter-Claim Defendant, | ) ) | |
| v. | ) ) | CAUSE NO.: 2:15-CV-66-JEM |
| JUAN AND MARIA GARCIA, | ) ) | |
| Defendants/Counter-Claimants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on cross-motions for summary judgment: (1) Plaintiff Atlantic Casualty Insurance Company's Motion for Summary Judgment [DE 23], filed on April 22, 2016; and (2) Defendants Juan and Maria Garcia's Motion for Partial Summary Judgment and Response to Atlantic Casualty's Motion for Summary Judgment [DE 25], filed on May 26, 2016.

The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge, *see* DE 14, giving this Court jurisdiction to decide this case under 28 U.S.C. § 636(c).

**I.    Background**

In 2004, Juan and Maria Garcia purchased property in Lake Station, Indiana. The site was the home of an old dry cleaning facility that had operated from around 1945 to 2000. DE 23-6 at 10-15. In connection with the dry cleaning operation, the site housed underground storage tanks containing "Stoddard solvent," a petroleum-based solvent used in dry cleaning; "PCE" solvent; and heating oil. DE 23-6 at 10-18.

Around 1999 or 2000, a site assessment had revealed that some of the tanks containing Stoddard solvent were leaking. An environmental consulting company reported the leak to the Indiana Department of Environmental Management, which requested further testing. Testing continued into 2004, the year the Garcias bought the site. *See generally* DE 23-6 at 10-19. The

Garcias say they had no knowledge of the preexisting contamination when they bought the property, nor did they for many years after.

After buying the property, the Garcias leased the site to tenants who operated an auto repair shop and a day spa. The Garcias bought commercial general liability insurance every year, but the relevant insurer in this case is Atlantic, from whom the Garcias bought commercial general liability insurance in 2009 and 2010. The first policy ran for a year beginning on June 25, 2009, and the Garcias renewed for a second year, ending on June 25, 2011. For simplicity, the Court will refer to the pair of year-long policies as "the policy."

In September 2014, the Garcias learned of the Indiana Department of Environmental Management's claim seeking to have the Garcias conduct and pay for further investigation and remediation of environmental contamination originating on the property. In November 2014, the Garcias notified Atlantic of the IDEM's claim.

The Garcias also hired a company called Environmental Inc. to investigate the site. Environmental reported that the pollution consisted of chemicals from the site's old dry cleaning operation's underground storage tanks: Stoddard solvents, "PCE" solvents, and heating oil. DE 23-6 at 10-18; DE 23-6 at 14 ("Q: . . . The contamination sources that we just talked about, [Stoddard solvents, PCE solvents, and heating oil], those contamination sources would have all predated the Garcias' purchase of the property, correct? A: Yes."); DE 23-12 ("The cause of the contamination is clearly the dry cleaning operations in which [the dry cleaners' owners] engaged for many years . . .").

Atlantic denied the Garcias' claim and filed this lawsuit, seeking declaratory judgment that its policy does not provide coverage to the Garcias. Both sides now seek summary judgment.

## II. Legal standard

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, for summary judgment to be appropriate, "the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry.*, 16 F.3d 832, 836 (7th Cir. 1994) (internal quotation omitted).

In considering summary judgment, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). The Court at summary judgment does not evaluate the weight of the evidence, judge witnesses' credibility, or determine the truth of the matter, but rather determines whethere is a genuine issue of triable fact. *See Cimino v. Fleetwood Enters.*, 542 F. Supp. 2d 869, 873 (N.D. Ind. 2008).

Indiana state law governs the substance of the parties' coverage dispute. *See, e.g., Am. Std. Ins. Co. v. Drew*, No. 08-48, 2009 U.S. Dist. LEXIS 99135, *11 (N.D. Ind. Oct. 15, 2009) (citing *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005)). In Indiana, the construction of a written contract is a generally question of law for which summary judgment is "particularly appropriate." *Plumlee v. Monroe Guar. Ins. Co.*, 655 N.E.2d 350, 354 (Ind. Ct. App. 1995), *trans. denied*. But before granting summary judgment based on the construction of a written contract, the

Court must determine either that as a matter of law the contract is not ambiguous or uncertain, or that any ambiguity can be resolved without the need for fact-finding. *Id.*

Generally, insurance contracts "are subject to the same rules of interpretation and construction as are other contracts." *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). An exclusion in an insurance policy "must clearly and unmistakably bring within its scope the particular act or omission that will give rise to the exclusion," and coverage "will not be excluded or destroyed by an exclusion unless such clarity exists." *Keckler v. Meridian Sec. Ins. Co.*, 967 N.E.2d 18, 23 (Ind. Ct. App. 2012), *trans. denied*.

An insurer's duty to defend its policyholder is broader than its contractual obligation to provide coverage. *Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991). But while the duty is broader, it "is not boundless." *West Bend Mut. Ins. Co. v. United States Fid. & Guar. Co.*, 598 F.3d 918, 922 (7th Cir. 2010) (citing Indiana law). An insurer may properly choose not to defend if its independent investigation of the facts underlying a complaint against its insured "reveals a claim patently outside of the risks covered by the policy." *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 901 (Ind. Ct. App. 1992), *trans. denied*. The nature of the claim, not the merit, establishes the insurer's duty to defend. *Trisler*, 575 N.E.2d at 1023.

## III. Policy language

The policy obligated Atlantic to defend the Garcias against a lawsuit seeking either of two types of damages: damages for bodily injury and property damage (Coverage A), and damages for personal and advertising injury (Coverage B). But the policy also contained two relevant exclusions: a pollution exclusion and a claims-in-process exclusion.

4

### A. Pollution exclusion

The pollution exclusion appears in both Coverage A and Coverage B.

In Coverage A, the pollution exclusion says that the insurance does not apply to: (1) bodily injury or property damage caused by "pollutants"; or (2) any loss, cost, or expense arising out of any (a) request, demand, or requirement to respond to or assess the effects of "pollutants"; or (b) any claim or suit by a governmental authority for damages because of responding to or assessing the effects of "pollutants."

In Coverage B, the pollution exclusion says that the insurance does not apply to "personal and advertising injury" arising out of the actual, alleged, or threatened release of "pollutants," nor to any loss, cost, or expense arising out of: (1) any request, demand, or requirement to respond to or assess the effects of "pollutants," or (2) any claim or suit by a governmental authority for damages because of responding to or assessing the effects of "pollutants."

The policy defines a "pollutant" as:

> [A] solid, liquid, gaseous, or thermal irritant or contaminant or all material for which a Material Safety Data Sheet is required pursuant to federal, state, or local laws, where ever discharged, dispersed, seeping, migrating or released, including but not limited to petroleum, oil, heating oil, gasoline, fuel oil, carbon monoxide, industrial waste, acid, alkalis, chemicals, waste, treated sewage; and associated smoke, vapor, soot and fumes from said substance. Waste includes material to be recycled, reconditioned, or reclaimed.

### B. Claims-in-process exclusion

The claims-in-process exclusion also appears in both Coverage A and Coverage B.

In Coverage A, the claims-in-process exclusion says that the insurance does not apply to: (1) any loss or claim for damages arising out of or related to bodily injury or property damage, whether known or unknown, that (a) first occurred before the policy's inception date, or (b) is or is alleged

to be in the process of occurring as of the policy's inception date; or (2) any loss or claim for damages arising out of or related to bodily injury or property damage, whether known or unknown, that is in the process of settlement or suit as of the policy's inception date.

In Coverage B, the claims-in-process exclusion says that the insurance does not apply to: (1) any loss or claim for damages arising out of or related to personal and advertising injury liability, whether known or unknown, that (a) first occurred before the policy's inception date, or (b) is or is alleged to be in the process of occurring as of the policy's inception date; or (2) any loss or claim for damages arising out of or related to personal and advertising injury liability, whether known or unknown, that is in the process of settlement or suit as of the policy's inception date.

IV. **Analysis**

Atlantic says its policy does not provide coverage for two reasons: (1) the chemicals at issue are required to have Material Safety Data Sheets under federal law, and the policy specifically excludes coverage for chemical contaminants that must have Material Safety Data Sheets under federal law; and (2) the pollution at the site predates both the Garcias' purchase of the site and the Garcias' purchase of insurance from Atlantic, and the policy excludes coverage for losses or claims for damage that first occurred before the policy's inception. Atlantic says it is entitled to summary judgment on either or both of these grounds.

Atlantic also asks for summary judgment on the Garcias' bad faith counterclaim. Atlantic says the Garcias' bad faith counterclaim fails as a matter of law because Atlantic's policy does not provide coverage to the Garcias. Alternatively, Atlantic says, the bad faith counterclaim fails as a matter of law because Atlantic denied coverage in good faith.

The Garcias disagree; they say that their policy with Atlantic obligates Atlantic to defend

6

and indemnify them, and they ask for partial summary judgment in their favor.

   A.   **Pollution exclusion**

Atlantic's policy excludes coverage for "pollutants," which the policy defines as including "heating oil" as well as "all material for which a Material Safety Data Sheet is required" under federal, state, or local law. Material Safety Data Sheets are required for all chemicals deemed "hazardous" by the Occupational Safety and Health Administration. *United Steelworkers of Am. v. Auchter*, 763 F.2d 728, 732-33 (3d Cir. 1985).

Here, the chemicals at issue are Stoddard solvents, PCE solvents, and heating oil. Heating oil is specifically listed in the policy's pollution exclusion, and OSHA has identified Stoddard solvents and PCE as hazardous. *See* 29 CFR 1910.1000, Table Z-1 at 16 (listing Stoddard solvents and Perchloroethylene (a.k.a. PCE) as "Hazardous Substances"); *see also* DE 23-6 at 17 ("Q: Would you expect there to be an MSDS sheet for all of the chemicals that you identify as being present on the Garcia property? A: Yes."). So because the policy specifically lists heating oil and because Stoddard and PCE solvents are required to have MSDSs under federal law, Atlantic says that the policy excludes coverage for the pollutants found on the Garcias' site.

As the Garcias point out, Indiana courts have repeatedly found pollution exclusions ambiguous and construed them not to exclude coverage. *See, e.g.*, *American States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996) (standard pollution exclusion—"any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste"—is ambiguous); *Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926 (Ind. Ct. App. 1999) (standard pollution is ambiguous and is construed not to exclude coverage); *Freidline v. Shelby Ins. Co.*, 739 N.E.2d 178 (Ind. Ct. App. 2000) (standard pollution exclusion is ambiguous

and is construed not to exclude coverage), *rev'd on other grounds*, 774 N.E.2d 37 (Ind. 2002); *State Auto Mut. Ins. Co. v. Flexdar*, 964 N.E.2d 845, 851 (Ind. 2012) (standard pollution exclusion is ambiguous and is construed not to exclude coverage) ("our decisions have consistently held that the insurer can (and should) specify what falls within its pollution exclusion"); *Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 777 F.3d 415, 417 (7th Cir. 2015) ("Indiana requires that for [a pollution-exclusion] clause to be enforceable the policy must 'specify what falls within its pollution exclusion.'") (quoting *Flexdar*, 964 N.E.2d at 848).

However, the pollution exclusion in Atlantic's policy is more specific than the exclusions in those cases. And prior cases are not controlling where the policy language differs. *See West Bend Mutual Ins. Co. v. United States Fid. & Guar. Co.*, 598 F.3d 918, 921-24 (7th Cir. 2010) (in finding exclusion unambiguous, distinguishing language at issue from *Kiger* policy language, which was similar but distinguishable enough not to control result); *compare Flexdar*, 964 N.E.2d at 850 ("practically every substance would qualify as a 'pollutant' under [the standard] definition, rendering the exclusion meaningless"); *Old Republic Ins. Co. v. Gary/Chi. Int'l Airport Auth.*, No. 15-281, 2016 U.S. Dist. LEXIS 96361, *13 (N.D. Ind. July 25, 2016) ("No Indiana case has held that all pollution exclusions are unenforceable . . ."). So the cases the Garcias cite do not demand the conclusion that the pollution exclusion here is ambiguous.

But the Garcias counter that even Atlantic's more specific pollution exclusion language is ambiguous, because it refers to pollutants by citing to federal law rather than identifying specific pollutants within the policy itself.

Atlantic responds that the Indiana Supreme Court has approved of the practice of referencing federal law to exclude pollutants. *See Flexdar*, 964 N.E.2d at 852. In *Flexdar*, the Indiana Supreme

8

Court held that the pollution exclusion at issue was ambiguous. 964 N.E.2d at 851 ("Indiana precedent has consistently refused to apply a pollution exclusion like the one at issue in this case on grounds of ambiguity."). The court noted that an insurer "has the ability to resolve any question of ambiguity" by "more careful drafting," noting that, indeed, after the *Flexdar* litigation arose the *Flexdar* insurer had done just that by revising its pollution exclusion language to be more specific. *Id*. at 852. The court then quoted that revised language, which defined "pollutants" as including "substances specifically listed, identified, or described by one or more of the following references: Comprehensive Environmental Response, Compensation and Liability Act (CERLCA) Priority List Hazardous Substances (1997 and all subsequent editions), Agency for Toxic Substances And Disease Registry ToxFAQs . . . and/or U.S. Environmental Protection Agency EMCI Chemical References Complete Index," which resolved "any question of ambiguity." *Id*. So, Atlantic says, the Indiana Supreme Court has explicitly blessed the practice of referring to federal law to define "pollutants" in an insurance policy exclusion.

But U.S. District Court for the Southern District of Indiana has disagreed with Atlantic's interpretation of *Flexdar*. *See St. Paul Fire & Marine Ins. Co. v. City of Kokomo*, No. 13-1573, 2015 U.S. Dist. LEXIS 82465 (S.D. Ind. June 25, 2015), *reconsideration denied*, 2015 U.S. Dist. LEXIS 159176 (S.D. Ind. Nov. 25, 2015). There, an insurance policy defined pollutants by referring to federal and Indiana law, providing a list of laws as examples. The insurer argued that *Flexdar*'s language supported this practice—just as Atlantic argues here—but the *Kokomo* court disagreed. Although the revised policy language quoted approvingly in *Flexdar* "did contain a general reference to CERCLA [a federal law]," the *Kokomo* court found that the *Flexdar* court's approval of the revised language related to the revision's specific reference to "trichloroethylene (TCE),"

9

which was the very substance at issue in *Flexdar*. *Id*. at *31. In the *Kokomo* court's view, the *Flexdar* opinion did not demonstrate that the Indiana Supreme Court approves of defining "pollutant" in insurance policy exclusions by referring to federal and state law. To the contrary, the definition was "not sufficiently specific." *Id*. at 32-33 ("This general incorporation of state and federal laws is insufficient to comply with Indiana's stringent standard that an insurance policy specify what falls within its pollution exclusion.") (internal quotation omitted); *accord Kokomo*, 2015 U.S. Dist. LEXIS 159176, *18 (same result on reconsideration) ("defini[ng] . . . 'pollutant' [by] generally incorporating a plethora of federal and state environmental laws [i]s not sufficient"); *Old Republic Ins. Co. v. Gary/Chi. Int'l Airport Auth.*, 2016 U.S. Dist. LEXIS 96361, *8-10 (N.D. Ind. July 25, 2016) ("As recently noted in [*Kokomo*], Indiana utilizes a unique approach to determine the applicability of a pollution exclusion . . . .").

Here, although Atlantic's policy specifically lists "heating oil" as a pollutant—just as the revised language quoted approvingly in *Flexdar* listed TCE, the substance at issue there—the policy's definition of "pollutant" does *not* list Stoddard solvents or PCE solvents. Rather, the pollution exclusion purports to encompass Stoddard solvents and PCE solvents by reference to federal law. So the ultimate question is whether referring to federal law is enough to satisfy the Indiana Supreme Court's stringent standards with respect to pollution exclusions. Atlantic argues that *Flexdar* indicates that the Indiana Supreme Court approves of defining "pollutant" in an insurance policy exclusion by referring to federal law, but the U.S. District Court for the Southern District of Indiana has disagreed. *See Kokomo*, 2015 U.S. Dist. LEXIS 82465 at 31 ("The Court concludes that th[is] definition of 'pollutant' . . . is not sufficiently specific such that the Court can grant summary judgment to [the insurer] . . .").

The Court is inclined to agree with its colleague in the Southern District of Indiana, but the question is a close one, and the Court is also mindful of Indiana Supreme Court Justice Sullivan's warning that finding nearly all pollution exclusions unenforceable will cause "premium increases as insurers seek to charge for the increased risks [of extremely unpredictable pollution liability]" and will present Indiana businesses with "a Hobson's choice: paying higher premiums for coverage they don't need, thereby dissipating their financial resources, or going without coverage, thereby exposing themselves to risk of loss from ordinary tort liability." *Flexdar*, 964 N.E.2d at 854 (Sullivan, J., dissenting).

Under the principle of judicial restraint, federal courts "should not reach out to resolve complex and controversial questions when a decision may be based on a narrower ground." *Allen v. Ferguson*, 791 F.2d 611, 615 (7th Cir. 1986). And as explained in Section IV.B, below, the Court finds that Atlantic's policy does not provide coverage to the Garcias because of the policy's claims-in-process exclusion. So the Court need not rule on whether the policy's pollution exclusion bars coverage in order to resolve this case, and the Court declines to do so.

### B. Claims-in-process exclusion

Atlantic argues that its policy does not provide coverage to the Garcias because of the policy's claims-in-process exclusion. That exclusion precludes coverage for losses or claims for damages arising out of property damage—known or unknown—that occurred or was in the process of occurring before the policy's inception. So if the property damage happened before the policy period but the damage had not been discovered, the exclusion bars coverage. And here, Atlantic says, no one disputes that the pollution at issue predated the Garcias' ownership of the site.

The Garcias counter that the relevant "loss" or "claim for damages" for which the policy

11

provides coverage is the Indiana Department of Environmental Management's claim, which did not begin, they say, until 2014 when the IDEM advised the Garcias of their obligation to clean up the contamination emanating from the site. Likewise, the Garcias did not begin incurring expenses related to the claim until they entered the IDEM's voluntary remediation program in 2015. So, the Garcias say, the claims-in-process exclusion does not apply because there was no loss or claim for damages in process before the policy's inception in 2009. Before 2009, the Garcias say, the IDEM had asserted no claim against the Garcias before 2009, and the Garcias had suffered no loss.

But to accept the Garcias' position would be to ignore the claims-in-process exclusion's plain language. That language excludes losses or claims for damages arising out of property damage, *whether known or unknown*, that first occurred or began occurring before the policy's inception. The Garcias interpret the exclusion as barring coverage for *claims* or *expenses* that occurred or began occurring before the policy's inception, but the relevant question is when the *damage* occurred or began occurring. *See, e.g., Boss Mgmt. Servs. v. Acceptance Ins. Co.*, No. 06-2397, 2007 U.S. Dist. LEXIS 69666, *31 (S.D. Tex. Sept. 19, 2007) (insurer's denial on basis of claims-in-process exclusion, which "excludes coverage for loss arising out of property damage that 'first occurred prior to the inception date' of the policies," presents "the same" question as insurer's denial on basis that "[t]he policy language clearly requires that, to be covered, the property damage must occur during the policy period"); *Atl. Cas. Ins. Co. v. Brent Jessee Recording & Supply, Inc.*, No. 11-939, 2012 U.S. Dist. LEXIS 24072, *7-8 (W.D. Pa. Feb. 24, 2012) (similar analysis).

Here, there is no question that the pollution at issue—and hence the damage to the Garcias' property—began long before the Garcias even bought the property. So the exclusion applies, and the policy does not provide coverage to the Garcias.

The Garcias argue in the alternative that the claims-in-process exclusion merely limits Atlantic's damages obligations to damages occurring during the policy period. So although Atlantic's liability may not extend beyond its *pro rata* share for its own policy period, the Garcias say, that does not "defeat coverage" or limit Atlantic's duty to defend.

But while it is true that the policy generally limits Atlantic's liability to damage that "occurs during the policy period," DE 23-3 at 13, as explained above the claims-in-process exclusion excludes coverage for property damage that occurred or was in the process of occurring before the policy period commenced. So the policy does not provide coverage, and Atlantic is entitled to summary judgment.

### C. Bad faith

Atlantic also asks the Court to enter summary judgment in Atlantic's favor on the Garcias' bad faith counterclaim. Because the policy does not provide coverage here, Atlantic says, Atlantic rightfully denied coverage. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002) ("To prove bad faith, the [insured] must establish . . . that the insurer had knowledge that there was no legitimate basis for denying liability."); *Thomas v. Victoria Fire & Cas. Ins. Co.*, 706 N.E.2d 212, 216 (Ind. Ct. App. 1999) (affirming summary judgment to insurer on bad faith claim where insureds were not entitled to coverage). Alternatively, Atlantic says, at worst this declaratory judgment action represents a good-faith coverage dispute, not a bad faith denial of coverage. *Freidline*, 774 N.E.2d at 40 ("a good faith dispute about whether the insured has a valid claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith").

As explained above, the policy does not provide coverage to the Garcias because of the claims-in-process exclusion. So Atlantic did not act in bad faith in denying coverage, and summary

13

judgment in Atlantic's favor is appropriate.

### D. The Garcias' other summary judgment arguments

Because the claims-in-process exclusion frees Atlantic from the obligation to defend the Garcias, the Court need not address the Garcias' other summary judgment arguments, which attack Atlantic's other justifications for not defending the Garcias.

### V. Conclusion

Plaintiff Atlantic Casualty Insurance Company is entitled to declaratory judgment that its policy does not provide coverage to the Garcias for the claims alleged by the IDEM and that Atlantic has no obligation to defend or indemnify the Garcias for the claims alleged by the IDEM. The Court accordingly **GRANTS** Atlantic's Motion for Summary Judgment [DE 23] and **DENIES** Defendants Juan and Maria Garcias' Motion for Partial Summary Judgment [DE 25]. The Court **DIRECTS** the Clerk of the Court to enter judgment in Atlantic's favor.

So ORDERED this 5th day of January, 2017.

                s/ John E. Martin
                MAGISTRATE JUDGE JOHN E. MARTIN
                UNITED STATES DISTRICT COURT

cc:    All counsel of record